IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN L. HALL,

       Petitioner,

v.                                     CIV 18-1096 JCH/KBM

DWAYNE SANTISTEVAN, Warden,[1]
and HECTOR H. BALDERAS,
Attorney General for the State of New Mexico,

       Respondents.

## PROPOSED FINDINGS OF FACT
## AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (*Doc. 2*), filed by John L. Hall ("Petitioner") on November 26, 2018. Respondents filed their Answer to this Petition on March 30, 2020. *Doc. 10*. The Honorable Judith C. Herrera referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. *Doc. 12*.

---

[1] According to Respondents, Petitioner is serving a 16-year term of imprisonment in Lea County Correctional Facility pursuant to the Judgment and Sentence entered June 10, 2014. *Doc. 10*, Ex. A. Thus, he is in the lawful custody of Dwayne Santistevan, the Warden of that facility. *See* Lea Cty. Corr. Facility, https://cd.nm.gov/nmcd-prison-facilities/lea-county-correctional-facility (last visited June 3, 2020); *see also Doc. 10* at 2 n.2. Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts directs that "the state officer who has custody," here Mr. Santistevan, is a respondent in a § 2254 action.

Having reviewed the submissions of the parties and the relevant law, the Court recommends that the Petition be denied on its current record.[2]

## I. Background Facts and Procedural Posture

In the summer of 2012, Petitioner and Antonio Ortiz, Jr. ("Ortiz") were living together in a dwelling owned by Petitioner's father. *Doc. 10*, Ex. E at 3. On July 2, 2012, a heated disagreement ensued between Petitioner, Ortiz, and Petitioner's father regarding Ortiz's failure to contribute money toward utilities and the possible eviction of Petitioner and Ortiz. *Docs. 2* at 7; *10*, Ex. E at 3. Petitioner alleges that when Ortiz became enraged, he "decided to get his father's .32 cal. pistol from the bedroom to intimidate Ortiz into leaving the premises." *Doc. 2* at 7. The argument intensified and Petitioner maintains that Ortiz "suddenly turned towards Petitioner and lunged at him, saying, 'I'll kill you.'" *Id*. Petitioner then shot Ortiz, striking him in the abdomen. *Id*. at 8.

Petitioner asserts that he accidentally fired a second shot, which struck the wall of his father's residence. *Id*. In support of this account, he notes that Officer Walter Coburn testified at trial that he observed a bullet hole in his father's wall. *Id*. Petitioner submits that if the second shot had been intentional, it "would not have missed Ortiz – who was approximately 3-5 feet away from Petitioner when the shots were fired." *Id*.

At trial, Petitioner's videotaped police statement, which offered a different account of the shooting, was played for the jury. *See Doc. 10*, Exs. G at 3; H at 3. In

---

[2] The Court need not hold an evidentiary hearing, as Petitioner has not made any showing that his claims rely on "a new rule of constitutional law, made retroactive . . . by the Supreme Court[,]" "a factual predicate that could not have been previously discovered through the exercise of due diligence[,]" or that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty[,]" as required by 28 U.S.C. § 2254(e)(2).

that statement, Petitioner explained that he retrieved his father's gun from his bedroom and demanded that Ortiz pay an outstanding debt, when Ortiz responded, "bring it" and "you're not going to shoot me." *Doc. 11*, Trial Tr., Feb. 25, 2014, at 9:09-30-9:14:37. Petitioner stated that he then shot Ortiz twice. *Id.*

Petitioner also offered live testimony at trial. *See Doc. 11*, Trial Tr., Feb. 25, 2014. He testified that while Ortiz was arguing with his father, he left the room, retrieved a pistol from his father's bedroom headboard, removed the pistol from the holster, and returned with the gun to the room where Ortiz and his father were arguing. *Id.* at 12:52:35-12:52:54. According to Petitioner's trial testimony, Ortiz acknowledged the gun, responding, "You went and got your little gun?" *Id.* at 12:56:00. Petitioner reported that he apologized to Ortiz, saying, "That's my bad," and suggesting that he put the gun back and they leave the premises. *Id.* at 12:56:46-12:57:00. But, instead, Petitioner recalled that Ortiz responded, "You think I'm scared of a gun? I've been shot before." *Id.* at 12:57:07-12:57:08. Petitioner testified that Ortiz took a step toward him, and he fired the pistol, attempting to "wound him enough to slow him down." *Id.* at 12:57:50-12:57:59. He also testified that after he shot Ortiz in the abdomen, Ortiz responded, "You shot me," and took another step forward. *Id.* at 12:58:15-12:58:40. Petitioner testified that he was "pretty sure" that Ortiz threatened, "I'm gonna kill you," just before he fired a second shot. *Id.* at 12:58:00-12:59:05. Finally, Petitioner explained that he did not include all of these details in his statement to law enforcement because of the effects of adrenaline. *Id.* at 12:59:09-12:59:15.

Following the presentation of evidence, the state trial court instructed the jury on the elements of first and second-degree murder and voluntary manslaughter. *Doc. 10*,

Ex. B, Instructions 3, 4, 7. The court defined "sufficient provocation" and explained what the State needed to prove beyond a reasonable doubt in order to refute Petitioner's claim of self-defense. *Id.* at Instructions 8, 10. Ultimately, the jury found Petitioner guilty of murder in the second degree. *See Doc. 10*, Ex. C.

Petitioner appealed his second-degree murder conviction, arguing that there was insufficient evidence to disprove sufficient provocation. *Doc. 10*, Ex. E. The New Mexico Court of Appeals assigned the matter to its summary calendar, proposing summary affirmance. *Doc. 10*, Ex. F. Kathleen T. Baldridge, Assistant Public Defender, filed a Memorandum in Opposition to Proposed Summary Affirmance and Motion to Amend Docketing Statement ("Memorandum in Opposition") on Petitioner's behalf. *Doc. 10*, Ex. G. She challenged the sufficiency of evidence supporting Petitioner's second-degree murder conviction and asserted that "[v]iewing the evidence in a light most favorable to the State, a rational jury could not have determined beyond a reasonable doubt that [Petitioner] did not act with sufficient provocation when he fired the shots that took [Ortiz's] life." *Id.* at 10. Ms. Baldridge also moved to amend Petitioner's docketing statement to include a claim that the trial court erred in refusing to instruct the jury on the elements of involuntary manslaughter. *Id.* at 1. As Petitioner notes in his § 2254 Petition, Ms. Baldridge suggested that Petitioner confessed to shooting Ortiz twice. *See id.* at 3-4 ("John shot Antonio again and he fell to the floor."), 7 ("Antonio lunged at John twice and John fired twice, ultimately killing Antonio.").

The Court of Appeals affirmed the trial court in a February 9, 2015 Memorandum Opinion. *Doc 10*, Ex. H. The appellate court determined that the jury could properly conclude that Petitioner had not been sufficiently provoked. *Id.* at 3. It noted that the jury

4

heard Petitioner's confession to law enforcement, which it summarized as follows: "Ortiz said[,] 'bring it' and 'you're not going to shoot me,' and bowed his chest. [Petitioner] then shot [Ortiz]. [Petitioner] shot [Ortiz] a second time after [Ortiz] said 'you shot me.'" *Id.* (citations omitted). In addition, the Court of Appeals determined that Petitioner's claim that he was entitled to an involuntary manslaughter instruction was not viable. *Id.* at 3-4.

Next, Petitioner filed a Petition for Writ of Certiorari,[3] which the New Mexico Supreme Court denied on March 18, 2015. *Doc. 10,* Exs. I-J.

Two months later, Petitioner filed a *pro se* Petition for a Writ of Habeas Corpus in state district court, alleging that the performance of his trial counsel, Bryan Collopy, was constitutionally deficient, because Mr. Collopy failed to retain an expert witness to testify concerning ballistics. *Doc. 10,* Ex. L at 6-9. The state district court appointed counsel to assist Petitioner with his state habeas petition. *Doc. 10*, Ex. M. Thereafter, Attorney Robert Tangora filed an Amended Petition for Writ of Habeas Corpus in which he too alleged that Mr. Collopy was ineffective by failing to retain an expert to testify regarding the shooting. *Doc. 10*, Ex. N at 2. Mr. Tangora asserted that "expert witness testimony would have rebutted the State's theory and would have certainly put reasonable doubt in the jurors' minds and there is a reasonable probability that the outcome of the trial would have been different." *Id.* at 7-8. Mr. Tangora maintained that an expert would "substantiate Petitioner's theory that he did not intend to kill Ortiz" by providing expert testimony "that due to the height difference of Petitioner and Ortiz, once Petitioner raised his gun and the gun fired, the bullet would have struck [Ortiz] below the

---

[3] Petitioner's Writ is entitled "Petition for Writ of Certiorari to the New Mexico Court of Appeals"; however, the Petition was both filed in and decided by the New Mexico Supreme Court. *See Doc. 10*, Exs. I-J.

abdomen." *Id.* As to the second shot, Mr. Tangora argued that "[h]ad trial counsel

retained an expert witness on firearms and self-defense, the jury would have

understood the second shot was an accidental discharge of the gun." *Id.* at 4. Mr.

Tangora explained further:

> [w]hen the second shot was fired, the gun was not pointing at Ortiz and the
> bullet did not strike him. Rather, the bullet struck the wall. Petitioner is a
> naval veteran with some additional experience in firing guns. If Petitioner
> had intended to kill Ortiz at such close range, the second bullet would not
> have missed. Accordingly, the only viable explanation is that Petitioner did
> not intend to kill Ortiz and the second bullet was unintentionally and
> accidentally discharged.

*Id.* at 4-5.

The State responded to the Amended Petition, maintaining that Mr. Collopy's

performance did not fall below an objective standard of reasonableness and that

Petitioner did not suffer prejudice. *Doc. 10*, Ex. R, at 3-4. The State noted that at trial

Mr. Collopy presented evidence to the jury that Petitioner was familiar with guns and did

not intend to kill Ortiz. *Id.* at 3. Additionally, the State argued that Petitioner's sworn trial

testimony contradicted his position in his habeas petition that his second shot was fired

by accident, as he testified at trial that he shot Ortiz a second time when Ortiz stepped

toward him. *Doc. 10*, Ex. R at 3 (citing Trial Tr., Feb. 2, 2014, 12:58:00; 1:24:45).[4]

The state district court denied Petitioner's request for habeas relief, explaining

that there was no reasonable probability that the proposed expert testimony would

undermine the jury's confidence that Petitioner was guilty of second-degree murder.

*Doc. 10*, Ex. S ¶ 9. The court determined that Petitioner had not established ineffective

---

[4] In its citations to the trial transcript, the State included the date of February 2, 2014.  However,
it appears that the correct date for the transcript was February 25, 2014. *See Doc. 11*, Trial Tr.,
Feb. 25, 2014, at 12:58:00; 1:24-45.

assistance of counsel or that counsel's failure to introduce testimony from a firearms expert was prejudicial to his defense, and it therefore rejected his ineffective assistance of counsel claim. *Id.* ¶ 8.

Next, Petitioner petitioned for certiorari to the New Mexico Supreme Court. *Doc. 10*, Ex. T. The Supreme Court, however, denied certiorari without discussion. *Doc. 10*, Ex. U.

Petitioner filed the subject federal habeas petition on November 26, 2018. *Doc. 2*. Parroting many of the factual and legal assertions articulated by counsel on direct appeal and in his state habeas petition, Petitioner now enumerates the following three grounds for relief: (1) there was insufficient evidence to support a conviction for second-degree murder; (2) the trial court erred in not instructing the jury on involuntary manslaughter; and (3) trial counsel was ineffective when he failed to retain a firearms expert. *Id.* at 5-16.

Petitioner filed his federal habeas petition after April 24, 1996; thus, it is subject to the terms of the Antiterrorism and Effective Death Penalty Act ("the AEDPA"). For purposes of the "in custody" requirement of 28 U.S.C § 2254, Respondents concede that Petitioner was in custody at the filing of the Petition and the Answer. *Doc. 10* at 4 n.5. Petitioner is in state custody pursuant to the Judgment and Sentence, which was filed on June 10, 2014, in the Fifth Judicial District Court, Lea County, New Mexico. *See Doc. 10*, Ex. A.

## II.  Legal Standard

Federal courts have statutory authority under § 2254, as amended by AEDPA, to issue habeas corpus relief for persons in state custody. *See Harrington v. Richter*, 562

U.S. 86, 97-98 (2011). AEDPA "circumscribes our review of federal habeas claims that were adjudicated on the merits in state-court proceedings," subject to only two exceptions. *Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012) (citation omitted).

A federal court may grant relief from a state court decision only where a petitioner demonstrates that the trial court's resolution of his claims was "'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* (quoting 28 U.S.C. § 2254(d)(1), (2)) (subsequent citation omitted). In analyzing the state court's decision, the Court may only review the record that was before the state court and all factual findings are presumed correct unless rebutted by "clear and convincing evidence." *Id.* (quoting 28 U.S.C. § 2254(e)) (subsequent citation omitted).

Under § 2254(d)(1), the threshold question asks whether the applicant is seeking to invoke a rule of law that was clearly established by the Supreme Court at the time the conviction became final. *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011) (citation omitted); *see also Williams v. Taylor*, 529 U.S. 362, 390 (2000). If the law was clearly established, then the court determines whether the state court decision was "contrary to or involved an unreasonable application of that clearly established law." *Byrd*, 645 F.3d at 1165 (quoting *Turrentine v. Mullin*, 390 F.3d 1181, 1189 (10th Cir. 2004)).

First, a state-court decision is "contrary to" clearly established law "if the state court applies a rule different from the governing law set forth" by the Supreme Court or

8

"if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Hooks*, 689 F.3d at 1163 (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). The state court is not required to cite to, or even be aware of, Supreme Court decisions, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

Second, "[a] state-court decision is an 'unreasonable application' of clearly established federal law when the state court 'identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of petitioner's case.'" *Hooks*, 689 F.3d at 1163 (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)). AEDPA precludes issuance of a writ simply because the federal court concludes in its independent judgment that the state court applied the federal law erroneously or incorrectly. *Byrd*, 645 F.3d at 1166. Instead, the application must also be "objectively unreasonable." *Id.* As long as "fairminded jurists could disagree" as to the correctness of the state court's decision, *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004), this "'highly deferential standard for evaluating state-court rulings[ ]' . . . demands that state-court decisions be given the benefit of the doubt." *Hooks*, 689 F.3d at 1163 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

Even if a federal habeas court finds that the state court decision was contrary to or an unreasonable application of clearly established federal law, habeas relief may not issue unless the violation is of a sort that warrants such relief. *See e.g., Williams*, 529 U.S. at 375 ("It is, of course, well settled that the fact that constitutional error occurred in the proceedings that led to a state-court conviction may not alone be sufficient reason for concluding that a prisoner is entitled to the remedy of habeas."); *Wilson v. Sirmons,*

536 F.3d 1064, 1073 (10th Cir. 2008) ("If we find that the state court erred, we still must

determine whether the error is a structural defect 'in the constitution of the trial

mechanism, which def[ies] analysis by "harmless-error" standards.'") (quoting *Arizona v.*

*Fulminante,* 499 U.S. 279, 309 (1991)), *rehearing en banc granted on separate issue,*

549 F.3d 1267 (10th Cir. 2008).

Factual determinations qualify as unreasonable "if all '[r]easonable minds

reviewing the record' would agree" that they were incorrect. *Smith v. Aldridge*, 904 F.3d

874, 880 (10th Cir. 2018) (quoting *Brumfield v. Cain*, 576 U.S. 305, 135 S. Ct. 2269,

2277 (2015)). "[W]here the state courts plainly misapprehend or misstate the record in

making their findings, and the misapprehension goes to the material fact that is central

to petitioner's claim, that misapprehension can fatally undermine the fact-finding

process, rendering the resulting factual finding unreasonable." *Byrd*, 645 F.3d 1171-72

(10th Cir. 2011) (quotation omitted).

Because Petitioner is proceeding *pro se*, the Court construes his pleadings

liberally. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir.

2005). The Court will not, however, "take on the responsibility of serving as the litigant's

attorney in constructing arguments and searching the record." *Id.*

### III.   Discussion

#### A.  Exhaustion and Procedural Default

The petitioner in a habeas action brought pursuant to 28 U.S.C. § 2254 must

establish that he has properly exhausted available state-court remedies by raising his

federal claims in the state's highest court, either by direct review or in post-conviction

proceedings. *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th. Cir. 1994).

10

Here, Respondents concede that Petitioner's claims have been properly exhausted in the state courts and are ripe for review, save one component of his insufficiency claim. *See Doc. 10* at 7. Specifically, Respondents maintain that Petitioner "raises for the first time in this Court the issue of whether the New Mexico Court of Appeals misapplied the test set forth *in Jackson v. Virginia*, 443 U.S. 307 (1979), leading to a faulty conclusion as to the sufficiency of the evidence underlying his conviction for second-degree murder." *Id.*

Petitioner did not assert a misapplication of *Jackson* in his Petition seeking a Writ of Certiorari from the New Mexico Supreme Court. *See Doc. 10*, Ex. I. The Court agrees with Respondents that the exhaustion requirement applies to components of claims, just as it does to the broader claims. *See Jernigan v. Jaramillo*, 436 F. App'x 852, 855-56 (10th Cir. 2011). Thus, the *Jackson* component of Petitioner's insufficiency claim has not been properly exhausted.

Yet, Respondents explain that "in the interest of expediency," they waive the exhaustion requirement for Petitioner's *Jackson*-based argument, urging the Court to consider the substance of the claim. *Doc. 10* at 7.  Because Petitioner's *Jackson*-based argument is easily resolved on the merits, the Court will consider the entirety of Petitioner's insufficiency of evidence claim, including his *Jackson*-based argument. *See* 28 U.S.C. § 2254(b)(2) (providing that a petition for writ of habeas corpus may be denied on the merits, even when the petitioner fails to properly exhaust remedies in state court).

**B. Sufficiency of Evidence**

A conviction based on insufficient evidence violates the Due Process Clause of the Fourteenth Amendment. *Jackson*, 443 U.S. at 315; *Williams v. Trammell*, 782 F.3d 1184, 1192 (10th Cir. 2015). In a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 for insufficiency of evidence, the petitioner is entitled to habeas relief if, viewing the evidence presented at trial in the light most favorable to the State, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson* 443 U.S. at 324. Conversely, no habeas relief is warranted if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citation omitted). Thus, this Court must consider whether a rational juror could have determined on the evidence presented at Petitioner's trial that there was sufficient evidence to prove each element of second-degree murder beyond a reasonable doubt. *See id.* at 318-19. Significantly, this review is made under a doubly deferential standard. Indeed, in *Cavazos v. Smith*, the Supreme Court provided the following guidance for courts reviewing sufficiency of the evidence claims in a federal habeas actions:

> The opinion of the Court in *Jackson* . . . makes clear that it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial. A . . . federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision is "objectively unreasonable."

565 U.S. 1, 2 (2011) (quotation omitted).

To sustain a second-degree murder conviction under New Mexico law, the State was required to prove beyond a reasonable doubt that Petitioner: (1) killed Ortiz; (2) knew that his actions created a strong probability of death or great bodily harm to

12

Ortiz; (3) did not act as a result of sufficient provocation; and (4) that this happened in New Mexico on July 1, 2012. *See* N.M. U.J.I. 14-210. Petitioner does not dispute that he shot and killed Ortiz on July 1, 2012. Instead, he maintains, just as he did before the state district court on appeal and in his state habeas petition, that he did not *intend* to kill Ortiz and that the State failed to prove that he was not sufficiently provoked. *See*, *Docs. 2* at 7-9; *10*, Exs. E, at 3-5; G at 7-10; I at 7. Petitioner also submits, for the first time, that the "Court of Appeals "adopt[ed] the clearly erroneous facts misstated by appellate counsel" that he shot Ortiz twice. *Doc. 2* at 10. Further, he maintains that the Court of Appeals "misapplied the standard for reviewing the sufficiency of the evidence contrary to the U.S. Supreme Court's decision set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979) to reach their legal conclusion . . . ."

On direct appeal, the Court of Appeals applied what it described as a "two-step process" for analyzing the sufficiency of evidence to support Petitioner's second-degree murder conviction. *Doc. 10*, Ex. H at 2. First, it viewed the evidence in the light most favorable to the verdict. *Id*. Next, it made a legal determination as to "whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *Id*. (citing *New Mexico v. Apodaca*, 887 P.2d 756, 760 (N.M. 1994)).

The appellate court acknowledged Petitioner's testimony that Ortiz lunged at him while he was responding to an argument between Ortiz and his father. *Id*. at 3; *see Doc. 11*, Trial Tr., Feb. 25, 2014, at 12:43:17-12:59:33 (testifying that Ortiz stood up and lunged or stepped toward him just before he shot him). Nevertheless, it explained that "the jury was free to reject [Petitioner's] version of events at trial." *Doc. 10*, Ex. H, at 3

13

(citing *New Mexico v. Sutphin*, 753 P.2d 1314, 1319 (N.M. 1988)). It noted that, in addition to Petitioner's trial testimony, the jury also heard a recording of the statement that he provided to law enforcement, which it summarized as follows:

> Defendant stated that after retrieving the gun, he returned to the room, pointed the gun at victim, and demanded payment of the money owed. The victim said[,] "bring it" and "you're not going to shoot me," and bowed his chest. Defendant then shot the victim. Defendant shot the victim a second time after the victim said[,] "you shot me."

*Id.* (citations omitted). The Court of Appeals concluded that "[i]n light of this evidence, the jury could properly conclude that [Petitioner] had not been sufficiently provoked." *Id.*

Having considered the decision by the Court of Appeals on direct appeal, this Court is satisfied that it applied the correct standard under *Jackson*. Indeed, the appellate court's inquiry – whether the evidence viewed in the light most favorable to the State could justify a finding by any rational trier of fact that each element of second-degree murder was established beyond a reasonable doubt – is perfectly consistent with the standard articulated in *Jackson*. *Compare Doc. 10*, Ex. H, at 2-3*, with Jackson*, 443 U.S. at 313-14, 324.

The Court of Appeals' conclusion is also sound. As discussed below, when viewing the evidence in the light most favorable to the State, it was reasonable for the court to conclude that a rational trier of fact could find that the State established each element of second-degree murder beyond a reasonable doubt, including that Petitioner knew his actions "created a strong probability of death or great bodily harm" to Ortiz and that he lacked sufficient provocation.

Although Petitioner admits to pulling the trigger of the gun during his confrontation with Ortiz, he insists that he did not intend to kill Ortiz. *Doc. 2* at 8. He

emphasizes that he did not shoot Ortiz in the chest or the head despite having a clear shot at those areas of Ortiz's body. *Id.* He offers further background as well, indicating that he is a Navy Veteran with additional firearms experience. *Id.* Petitioner contends that the "second bullet was unintentionally and accidentally discharged," which he insists provides further evidence that he did not intend to kill Ortiz. *Id.* at 8-9. In Petitioner's statement to law enforcement after the shooting, which the jury heard during the course of his trial, Petitioner explained that he shot Ortiz in the "gut" rather than the head because he was merely trying to "stop him," not kill him. *Doc. 11*, Trial Tr., Feb. 25, 2014, at 9:10:15-9:11:26. And in his live trial testimony, Petitioner explained that he was attempting to "wound [Ortiz] enough to slow him down." *See id.* at 12:58:08-12:58:14.

Petitioner suggests that his conviction is not valid because the evidence demonstrates he did not intend to kill Ortiz. But it was not necessary, under New Mexico law, for the jury to find that Petitioner *intended* to kill Ortiz in order to find him guilty of second-degree murder. *See* UJI 14-210 NMRA. Rather, the jury was required to find that Petitioner knew his actions "created a strong probability of death or great bodily harm" to Ortiz. *See id.* Viewing the evidence in the light most favorable to the State, as it must, the Court is satisfied that a rational juror could determine that Petitioner's intentional attempt to "stop," "slow," or "wound" Ortiz by shooting him in the abdomen created, at minimum, a strong probability of great bodily harm to Ortiz. In other words, the Court of Appeals' determination as to this element of second-degree murder was objectively reasonable.

The jury was also required to find, beyond a reasonable doubt, that Ortiz "did not act as a result of sufficient provocation." UJI 14-210 NMRA. Under New Mexico law, sufficient provocation is an action that arouses anger, fear, or other extreme emotion such that it "would affect the ability to reason and cause a temporary loss of self control in an ordinary person of average disposition." UJI 14-222 NMRA; *see also New Mexico v. Kidd*, 175 P. 772, 774 (N.M. 1917). Provocation is *insufficient* if "an ordinary person would have cooled off before acting." UJI 14-222 NMRA; *see also Kidd*, 175 P. at 774.

Petitioner maintains that he "was frightened and shot Ortiz during a sudden quarrel or in the heat of passion." *Doc. 2* at 9. But the assertions in Petitioner's § 2254 action are not entirely consistent with the evidence presented at trial. In this federal habeas action, Petitioner asserts that Ortiz, upon seeing the gun he had retrieved from his father's bedroom, said, "You think I am scared of your little gun, I have been shot before, I will kill you." *Id.* at 7. Then, after the "argument intensified," Petitioner insists that Ortiz lunged at him, again threatening, "I'll kill you." *Id.* It was in response to these threats of deadly force, Petitioner submits, that he shot Ortiz in the abdomen. *Id.* at 7-8.

In contrast, Petitioner testified at trial that *after* he shot Ortiz in the abdomen, he is "pretty sure" that Ortiz threatened, "I'm gonna kill you." *Doc. 11*, Trial Tr., Feb. 25, 2014, at 12:58:00-12:58:12. Petitioner reported that he then fired a second shot. *Id.* at 12:58:49-12:58:14. Petitioner's statement to law enforcement differed further still. He explained that he retrieved his father's gun while Ortiz was engaged in an argument with his father and that he confronted Ortiz about the money that Ortiz owed him. *Id.* at 9:08:53. According to Petitioner's statement, Ortiz stood up and said, "bring it" and "you're not going to shoot me," at which point Petitioner fired two shots. *Id.* at 9:09:30-

16

9:14:37. Given the jury's verdict, the Court presumes that the jury considered the account offered in Petitioner's statement to law enforcement – the version offered closest in time to the shooting – to be the most accurate. *See Jackson*, 443 U.S. at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.")

A rational juror could determine, based upon Petitioner's statement to law enforcement, that an ordinary person of average disposition would have retained the ability to reason and maintain self-control, without resorting to deadly force, when taunted with statements like "bring it" and "you're not going to shoot me."  Similarly, a rational juror could find that an ordinary person, upset when a roommate confronted his elderly father, would have experienced adequate "cooling off" time when walking to another room of the house, retrieving a firearm from inside of a headboard, unholstering the gun, and returning to the room where the argument was taking place. In this Court's view, the New Mexico Court of Appeals reached the objectively reasonable conclusion under *Jackson* that a rational juror could determine that Petitioner lacked sufficient provocation.

Petitioner makes an additional argument in support of his insufficiency of evidence claim: that the Court of Appeals got the facts wrong. Specifically, he maintains that the appellate court adopted "clearly erroneous facts misstated by appellate counsel" as to the number of times he shot Ortiz. *Doc. 2* at 10. Petitioner insists that the testimony of the medical examiner supports the conclusion that Ortiz was struck by only

*one* bullet. *Id.* at 8. Further, he submits that the court's erroneous finding that Ortiz was shot twice led to the misapplication of *Jackson's* insufficiency of evidence standard. *Id.*

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010) (citation omitted).  Rather, it is "where the state courts plainly misapprehend or misstate the record in making their findings, *and the misapprehension goes to a material factual issue that is central to petitioner's claim*, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Byrd*, 645 F.3d 1171-72 (emphasis added) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004). Applying the language of § 2254(d)(2), the relevant question is whether the Court of Appeals' alleged factual error "resulted in a decision that was *based on* an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* § 2254(d)(2). But the Tenth Circuit has emphasized that the § 2254(d)(2) standard is "daunting"– one that will be satisfied in relatively few cases." *Byrd*, 645 F.3d at 1172 (quoting *Taylor*, 366 F.3d at 1000).

Petitioner's appellate counsel, Ms. Baldridge, indicated in her brief on direct appeal that Petitioner shot Ortiz *twice* after Ortiz lunged at him. *See Doc. 10*, Ex. G at 3-4 ("John shot Antonio again and he fell to the floor."), 7 ("Antonio lunged at John twice and John fired twice, ultimately killing Antonio."). For its part, the Court of Appeals noted that Petitioner told law enforcement that he first shot Ortiz when Ortiz challenged him by saying, "bring it" and "you're not going to shoot me" and bowing his chest. *Doc. 10*, Ex. H, at 3. The court went on to explain that Petitioner shot Ortiz a *second* time after Ortiz

18

exclaimed, "you shot me.'" *Id.* According to the Court of Appeals, it followed from Petitioner's confession that the "the jury could properly conclude that [Petitioner] had not been sufficiently provoked." *Id.*

Although Respondents suggest that Petitioner has mischaracterized the testimony of the pathologist who performed Ortiz's autopsy, they nevertheless assume, for purposes of analyzing Petitioner's insufficiency of evidence claim, that Ms. Baldridge "incorrectly advised the [C]ourt of [A]ppeals that Mr. Hall shot Mr. Ortiz twice" *and* that the Court of Appeals, in turn, repeated that misstatement. *Doc. 10* at 13. Even so, Respondents insist that any mistake as to the number of times Petitioner shot Ortiz is inconsequential to his § 2254 claim, as the appellate court's rejection of Petitioner's claim was not "based on" Ortiz being struck by two bullets. *Id.* (citing *Byrd*, 645 F.3d at 1171-72).

The Court's independent review of Petitioner's statement to law enforcement reveals that Petitioner *repeatedly* indicated in that he shot Ortiz *twice*. *See, e.g.*, *Doc. 11*, Trial Tr., Feb. 25, 2014, at 9:09:20-9:09:38 (upon being asked how many times he shot Ortiz, responding, "twice"); 9:10:39-9:10:48 (indicating that he fired twice and Ortiz fell to the floor); 9:14:21 (explaining that Ortiz asked, "You gonna shoot me?," and he shot him, and then Ortiz asked, "You gonna shoot me again?," and he shot him a second time); 9:14:51 (testifying that when he shot Ortiz the "second time," he saw it "stun" him, and he dropped the gun). At the same time, however, the testimony of the medical examiner who performed the autopsy of Ortiz was constrained to the discussion of a *single* entrance wound and a *single* exit wound of *one* bullet. *See Doc. 11*, Trial Tr., Feb. 25, 2014, at 10:55:45-11:05:30. Thus, the evidence presented at trial would

support the conclusion that while Petitioner fired twice at Ortiz, Ortiz was only struck by one bullet.

More importantly, though, the Court agrees with Respondents that the appellate court's conclusion – that the jury properly found no sufficient provocation – was not "based on" the assumption that Ortiz was struck by two bullets. *Doc. 10* at 13 (citing *Byrd*, 645 F.3d at 1171-72). Critically, neither the number of shots Petitioner fired nor the number of bullets that struck Ortiz appear to have been integral to the Court of Appeal's decision to reject Petitioner's insufficiency of evidence claim. Instead, the appellate court reasoned that the jury was free to disregard Petitioner's testimony that Ortiz lunged at him, in favor of his previous admission to law enforcement that he shot Ortiz after Ortiz challenged him, saying "bring it" and "you're not going to shoot me," while bowing his chest. Although the court did acknowledge that Petitioner admitted to shooting Ortiz a second time after Ortiz said, "you shot me," the court's ultimate decision did not hinge on a second shot by Petitioner. *See Byrd*, 645 F.3d at 1172 (citing Brian R. Means, *Federal Habeas Manual* § 3:96 (2010) for the proposition that *certain* factual misstatements by a state court do not render unreasonable its *ultimate* factual determination when that determination is based on other facts).

Petitioner cannot show that the rejection of his insufficiency of evidence claim was *based on* an erroneous factual determination as to the number of bullets that struck Ortiz; thus, he fails to show an "unreasonable determination of the facts in light of the evidence presented." *See* § 2254(d)(2). Moreover, notwithstanding the number of bullets that struck Ortiz, there remains sufficient evidence from which a rationale juror

could determine that the State proved each element of second-degree murder beyond a reasonable doubt.

In short, giving the state appellate decision the deference it deserves, this Court concludes that it neither unreasonably applied *Jackson* nor based its rejection of Petitioner's claim on an unreasonable determination of the facts in light of the evidence presented. The Court should deny Petitioner's insufficiency of evidence claim.

**C. Non-Instruction on Involuntary Manslaughter**

In his second ground for habeas relief, Petitioner asserts the same erroneous jury instruction claim that counsel advanced on his behalf on direct appeal. *Compare Doc. 2* at 13 and *Doc. 2-2* at 15-19, *with Doc. 10*, Ex. G, at 10-13. Petitioner maintains that the trial court *sua sponte* "refused to issue [a] jury instruction on [the] elements for involuntary manslaughter." *Doc. 2* at 13. He acknowledges that the court gave instructions for first-degree and second-degree murder as well as voluntary manslaughter and self-defense but insists it should have also given an instruction for involuntary manslaughter. *Id.*

Petitioner relies upon his own "Memorandum of Law," which he appended to his § 2254 Petition, to support his erroneous jury instruction claim. *See id.* ("See, Memorandum of Law in Support of Petition for Writ of Habeas Corpus, at p. 15"); *Doc. 2-2* at 15-19. In the Memorandum of Law, Petitioner parrots, nearly verbatim, the arguments made by Ms. Baldridge on direct appeal. *Compare Doc. 2-2* at 15-19, *with Doc. 10*, Ex. G, at 10-13. He explains that under New Mexico law involuntary manslaughter consists of an "unlawful killing of a human being without malice . . . committed in the commission of an unlawful act not amounting to felony, or in the

21

commission of a lawful act which might produce death in an unlawful manner or without due caution and circumspection." *Doc. 2-2* at 16 (citing *New Mexico v. Henley*, 237 P.3d 103 (N.M. 2010); *New Mexico v. Skippings*, 258 P.3d 1008 (N.M. 2011)). He argues, just as Ms. Baldridge did on direct appeal, that his conduct falls under the first prong of the *Skipping/Henley* definition of involuntary manslaughter – that is, the commission of an unlawful act not amounting to a felony that causes death. *Id.* at 17. According to Petitioner, a jury could have viewed the evidence presented at trial as establishing a violation of NMSA 1978, § 30-7-4(A)(3) (1993), which prohibits "endangering the safety of another by handling or using a firearm or other deadly weapon in a negligent manner." *Docs. 2-2* at 17; *10*, *Ex. G* at 12. Petitioner argues that he was "frightened by Ortiz and retrieved a gun in the middle of a war of words, never intending to use it let alone kill someone." *Doc. 2-2* at 18. He insists that "involuntary manslaughter would only have required a showing that [he] held a gun which discharged, he should have known of the danger involved by his actions, he acted with willful disregard for the safety of others and the discharge of the gun caused the death of Ortiz." *Id.* at 19 (citing UJI 14-231 NMRA).

The New Mexico Court of Appeals addressed these same arguments on direct appeal. There, the court acknowledged that under New Mexico law Petitioner would have been entitled to a lesser-included offense instruction if there was "some view of the evidence pursuant to which the lesser offense is the highest degree of crime committed, and that view must be reasonable." *Doc. 10*, Ex. H, at 4 (citing *New Mexico v. Brown*, 969 P.2d 313 (N.M. 1998)). However, given that Petitioner's jury rejected the self-defense instruction, the court concluded that "the best alternative would have been

for [Petitioner] to rely on an imperfect self-defense theory." *Id.* at 5. According to the court, "the lowest degree of homicide that can result from a finding of imperfect self-defense is voluntary manslaughter," not *involuntary* manslaughter. *Id.* (citing *New Mexico v. Abeyta*, 901 P.2d 164 (N.M. 1995), *abrogated on other grounds by New Mexico v. Campos*, 921 P.2d 1266 (N.M. 1996)). Accordingly, the Court of Appeals concluded that Petitioner's erroneous jury instruction claim was not viable. *Id.*

As Respondents note, Petitioner fails to identify any *federal* constitutional grounds for relief in this § 2254 action; instead, he rests his contentions upon New Mexico state law. *See Doc. 2* at 15-19. Yet, it is well-settled that federal habeas relief is not a method for correcting alleged state-law errors. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Indeed, setting aside Petitioner's conviction would only be justified if the alleged jury instruction error "had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense, or is otherwise constitutionally objectionable . . . ." *See Dockins v. Hines*, 374 F.3d 935, 938-39 (10th Cir. 2004) (quoting *Brinlee v. Crisp*, 608 F.2d 839, 854 (10th Cir. 1997) . Indeed, "[a] "§ 2254 petitioner has a heavy burden in attempting to set aside a state conviction based on an erroneous jury instruction." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (citing *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995)).

In this collateral proceeding, the determination by the Court of Appeals that Petitioner's erroneous jury instruction claim was not valid is presumed correct in the absence of clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1). Petitioner has pointed to no evidence, much less clear and convincing evidence, to suggest that the trial court's failure to give an involuntary manslaughter instruction had

the effect of rendering his trial so fundamentally unfair as to be constitutionally objectionable. Consequently, his erroneous jury instruction claim should also be denied.

### D. Ineffective Assistance of Counsel

In his third ground for habeas relief, Petitioner argues that trial counsel was ineffective for failing to retain a firearms expert. *Doc. 2* at 14-16. To establish ineffective assistance of counsel, a litigant must satisfy a two-part test. First, he must show that counsel's performance was deficient because it fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Second, he must show that counsel's deficient performance prejudiced him. *Id.* at 687. To demonstrate that counsel was ineffective, the litigant must satisfy both prongs outlined in *Strickland. See id.* The Court may address each of these components in any order and need not address both if the litigant makes an insufficient showing on one. *United States v. Dowell*, 388 F. App'x. 781, 783 (10th Cir. 2010).

In demonstrating that counsel's performance was deficient under the first prong of the *Strickland* test, "[j]udicial scrutiny of counsel's performance must be highly deferential" and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689. The reasonableness of counsel's performance must be evaluated considering all the circumstances. *Id.* at 688. In addition, to establish prejudice under the second prong of the *Strickland* test, a petitioner must show "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Surmounting *Strickland's* high bar is never easy." *Harrington v. Richter*, 562 U.S.

24

86, 88 (2011) (citation omitted). When a *Strickland* challenge is coupled with the "highly deferential" standards of § 2254, the litigant's burden of proving unreasonableness becomes even more difficult. *Id.* The question becomes not whether counsel's actions were reasonable, but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 105.

With respect to expert witnesses, the law acknowledges that their testimony may at times assist a trier of fact in understanding the evidence or determining facts in issue. *See* Rule 11-702 NMRA; Fed. R. Evid. 702. However, expert testimony is unnecessary "if the jury can decide [] the matter based on its common knowledge without the need for . . . scientific expertise." *Richter v. Presbyterian Healthcare Servs.*, 326 P.3d 50, 55 (2014) (quoting UJI 13-1101 NMRA cmt. 5). Thus, in evaluating the reasonableness of trial counsel's performance, the Court considers whether the matters over which a firearms expert might have testified were matters within the common knowledge of the jury.

Petitioner submits that the testimony of a firearms expert would have offered support for his "claim that he did not intend to kill or cause great bodily harm to the victim." *Id.* at 14. He specifies that an expert could have testified as to the differences in stature between Ortiz and himself, with Ortiz standing at approximately seven inches taller, and could have explained why the bullet struck Ortiz in the abdomen. *Id.* at 15. Additionally, Petitioner maintains that "an expert could demonstrate that the second shot was not intentionally fired, because if it was intentionally fired, then the bullet would not have missed the victim – who was approximately 3-5 feet away from the Petitioner when the shots were fired." *Id.* at 15; *Doc. 2-2* at 22.

25

Petitioner advanced these same ineffective assistance arguments in his state habeas petition, which the state district court rejected. *See Doc. 10*, Exs. N; S. The state court noted that Petitioner and his father both offered testimony at trial that Ortiz was the aggressor, but it observed that this testimony conflicted with prior statements. *Doc. 10*, Ex. S ¶ 5. The court also emphasized that Petitioner had not "retained any firearms expert and there is no evidence in the record as to what a firearms expert would say concerning . . . Petitioner firing . . . the weapon." *Id.* ¶ 6. Although Petitioner presented his theory of self-defense to the jury, the Court emphasized that the jury rejected that theory upon the totality of the evidence. *Id.* ¶ 7. Ultimately, the court concluded that Petitioner failed to show that trial counsel's performance fell below that of a reasonably competent attorney or that the failure to introduce expert firearms testimony was prejudicial to the defense. *Id.* ¶ 8. Thereafter, Petitioner filed a petition for certiorari with the New Mexico Supreme Court, but the Supreme Court denied certiorari without discussion. *Doc. 10*, Exs. T; U. Because the Supreme Court's Order did not include any discussion or rationale, this Court is left to consider, for purposes of its § 2254 analysis of Petitioner's ineffective assistance argument, the rationale supplied by the state trial court.[5] *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

As an initial matter, the Court notes that "the decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney." *United States v. Barrett*, 797 F.3d 1207, 1214 (10th Cir. 2015) (quoting *Boyle v. McKune,* 544 F.3d 1132, 1139

---

[5] In *Wilson*, the United States Supreme Court clarified that when a state supreme court decision "does not come accompanied with . . . reasons," the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

(10th Cir. 2008)). Moreover, a trial attorney is afforded wide latitude with regard to trial strategy, and a § 2254 petitioner must overcome a presumption of sound trial strategy. *See Strickland*, 466 U.S. at 689. Petitioner fails to overcome such a burden here.

As Respondents point out, apart from intent, the issues over which Petitioner suggests a firearms expert would have testified – the relative heights of Ortiz and himself, the distance between the two at the time of the shooting, and the fact that one bullet struck Ortiz in the abdomen and the other hit the wall – were not in dispute. *See Doc. 10* at 17 at 19; *see also Doc. 11*, Trial Tr., Feb. 25, 2014, at 9:11:56-9:12:13; 1:19:45-1:19:50; 1:24:45-1:25:18. Petitioner does not demonstrate otherwise. Further, the expert testimony Petitioner anticipates on the issue of intent (i.e. that he would have shot Ortiz in the head or chest, rather than in the abdomen and into the wall, had he intended to kill him) concerns matters of common knowledge over which expert testimony would have arguably been both cumulative and unhelpful. Finally, in the Court's view, Petitioner's trial counsel could have reasonably believed that eliciting such testimony from a firearms expert would have highlighted the close range at which Petitioner shot Ortiz and therefore been unfavorable to his defense. Petitioner cannot overcome the strong presumption that trial counsel's conduct fell within the wide range of reasonable assistance. Moreover, even if the expert would have testified as Petitioner represents, he has failed to demonstrate how such expert testimony would have changed the outcome of the trial, especially given his own inconsistent accounts of the shooting.

Ultimately, Petitioner has failed to satisfy his § 2254(d) burden, as he cannot demonstrate that the state trial court's decision under *Strickland* was contrary to or

27

involved an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented. The Court is satisfied that there is at least a reasonable argument that trial counsel satisfied *Strickland's* deferential standard. As to this final ground, the Court recommends denial of the Petition.

## IV.     Recommendations

For the reasons set forth herein, the Court recommends that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (*Doc. 2*), filed by John L. Hall on November 26, 2018, be denied and dismissed with prejudice. The Court recommends that a certificate of appealability be likewise denied.

_____
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**